# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 5, 2018          Decided May 22, 2018

No. 16-1454

MELLOW PARTNERS, A PARTNERSHIP,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLEE

---

On Appeal from the Decision
of the United States Tax Court

---

*Amish M. Shah* argued the cause for appellant. With him
on the briefs was *Thomas A. Cullinan*.

*Richard Farber*, Attorney, U.S. Department of Justice,
argued the cause for appellee. With him on the brief were
*Thomas J. Clark* and *Richard Caldarone*, Attorneys. *Ellen
Page DelSole*, Attorney, entered an appearance.

Before: WILKINS, *Circuit Judge*, and EDWARDS and
SILBERMAN, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge*
EDWARDS.

EDWARDS, *Senior Circuit Judge*: Mellow Partners ("Mellow"), a general partnership formed by and between two single-member LLCs, appeals the Tax Court's decisions holding that it had jurisdiction over partnership-related determinations concerning Mellow's partnership return for the 1999 tax year and imposing penalties for the underpayment of taxes. The Internal Revenue Service ("IRS") determined that Mellow was "formed and availed of solely for purposes of tax avoidance" and "constitute[d] an economic sham." Final Partnership Administrative Adjustment Letter, Tax Year Ended: December 31, 1999, *reprinted in* Joint Appendix ("J.A.") 64. On the basis of this determination, IRS commenced partnership-level proceedings under the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), 26 U.S.C. §§ 6221–6234 (2012), to adjust the partnership items in Mellow's 1999 partnership return. On March 24, 2005, IRS issued to Mellow a Notice of Final Partnership Administrative Adjustment ("FPAA") setting forth adjustments to the partnership items, disallowing losses from unlawful transactions, and assessing penalties.

Mellow filed a petition with the Tax Court challenging the FPAA. It then moved to dismiss the case for lack of jurisdiction, arguing that the FPAA was invalid because Mellow was a "small partnership" exempt from TEFRA's audit and litigation proceedings under 26 U.S.C. § 6231(a)(1)(B). The Tax Court denied the motion. The court held that, as set forth in Treasury Regulation § 301.6231(a)(1)–1(a)(2) and other authorities, a partnership does not qualify for the small-partnership exception if any of its partners is a "pass-thru partner" within the meaning of 26 U.S.C. § 6231(a)(9), and that disregarded single-member LLCs are such pass-thru partners. The Tax Court subsequently entered a decision upholding most of IRS's adjustments to Mellow's partnership return and imposing penalties.

On appeal, Mellow asserts that the Tax Court erred in rejecting its contention that it qualified for the small-partnership exception to TEFRA. It contends that, pursuant to certain tax-classification regulations, the single-member LLCs' individual owners rather than the LLCs themselves were Mellow's partners for TEFRA purposes and, therefore, Mellow constituted a "small partnership" within the plain meaning of § 6231(a)(1)(B). Mellow also asserts that the Tax Court erred in imposing penalties because IRS failed to obtain the requisite written approval for such penalties, as required by 26 U.S.C. § 6751(b)(1) (2012).

We affirm the Tax Court's holding that Mellow was subject to the TEFRA partnership proceedings. The record makes clear that Mellow's partners were the single-member LLCs, not their individual owners. Moreover, we defer to IRS's reasonable interpretation of its own regulation that a partnership with pass-thru partners is ineligible for the small-partnership exception and that single-member LLCs constitute pass-thru partners. We further hold that we lack jurisdiction over Mellow's challenge to the penalties because Mellow failed to raise its claim below and waived its claim by consenting to a decision applying penalties.

## I. BACKGROUND

### A. Statutory and Regulatory Background

The Internal Revenue Code ("Code") "recognizes a variety of business entities—including corporations, companies, associations, partnerships, sole proprietorships, and groups—and, based on the classifications, treats the entities in various ways for income tax purposes." *McNamee v. Dep't of Treasury*, 488 F.3d 100, 103 (2d Cir. 2007). Pursuant to its authority to "prescribe all needful rules and regulations for the enforcement

of [Title 26, the Internal Revenue Code]," 26 U.S.C. § 7805(a) (2012), the Treasury Department has promulgated regulations governing, *inter alia*, business entities with only one owner, *see* Treas. Reg. §§ 301.7701–1 to –3. These regulations, which are often referred to as "check-the-box" regulations, permit "an eligible entity with a single owner [to] elect to be classified as an association or to be disregarded as an entity separate from its owner" for federal tax purposes. *Id.* § 301.7701–3(a); *see also Pierre v. Comm'r*, 133 T.C. 24, 24 (2009), *supplemented*, 99 T.C.M. (CCH) 1436 (2010). If the entity is "disregarded as an entity separate from its owner," its activities "are treated in the same manner as a sole proprietorship, branch, or division of the owner." Treas. Reg. § 301.7701–2(a).

In contrast, "[a] business entity with two or more members is classified for federal tax purposes as either a corporation or a partnership." *Id*. Partnerships do not pay federal income taxes. 26 U.S.C. § 701 (2012). "A partnership's taxable income and losses instead pass through to the partners, who report their shares of partnership income or losses on their individual federal income tax returns." *Petaluma FX Partners, LLC v. Comm'r*, 792 F.3d 72, 75 (D.C. Cir. 2015) (citing § 701). Partnerships are nevertheless required to submit annual informational returns to IRS reporting income, gains, losses, and deductions. *See* 26 U.S.C. § 6031(a) (2012); Treas. Reg. § 301.6231(a)(3)–1(a)(1)(i).

Congress established a framework for reviewing partnership tax matters in TEFRA. In 2015, Congress amended the TEFRA provisions. *See* Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 1101, 129 Stat. 584, 625–38 (2015). However, because the amendments apply to partnership returns filed for partnership taxable years beginning after December 31, 2017, *id.* at 638, we proceed with our analysis

using the statutory provisions in force at the time of the events under consideration in this appeal.

Under the applicable TEFRA framework, "if the IRS disagrees with a partnership's information return, it can bring a partnership-level proceeding in which it may adjust 'partnership items,' defined as items 'more appropriately determined at the partnership level,'" by issuing a FPAA to the partnership's partners. *Petaluma FX Partners*, 792 F.3d at 75 (quoting §§ 6221 and 6231(a)(3)). The partners can challenge the FPAA by filing a petition for readjustment with the United States Tax Court, a federal district court, or the Court of Federal Claims. 26 U.S.C. § 6226(a) (2012). The reviewing court will have jurisdiction over the case so long as IRS has provided a valid FPAA and the taxpayer has "proper[ly] fil[ed] a petition for readjustment of partnership items for the year or years to which the FPAA pertains." *Wise Guys Holdings, LLC v. Comm'r*, 140 T.C. 193, 196 (2013). In particular, the court will have jurisdiction to "determine all partnership items of the partnership for the partnership taxable year to which the [FPAA] relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item." 26 U.S.C. § 6226(f) (2012).

As a general rule, the TEFRA procedures apply to all business entities that are required to file a partnership return. *Bedrosian v. Comm'r*, 143 T.C. 83, 104 (2014) (citing 26 U.S.C. § 6231(a)(1)(A)). However, there is a limited exception for "small partnerships," which are defined as having "10 or fewer partners each of whom is an individual . . . , a C corporation, or an estate of a deceased partner." 26 U.S.C. § 6231(a)(1)(B) (2012). In 1987, the Treasury Department promulgated temporary regulations setting forth rules governing the small-partnership exception. *See* Miscellaneous

Provisions Relating to the Tax Treatment of Partnership Items, 52 Fed. Reg. 6,779, 6,789 (Mar. 5, 1987). As relevant here, one of the temporary regulations provided that, "[t]he [small-partnership] exception provided in section 6231(a)(1)(B) does not apply to a partnership for a taxable year if any partner in the partnership during that taxable year is a pass-thru partner." *Id.* In 2001, the Treasury Department issued a final regulation, which stated, *inter alia*, that the small-partnership exception "does not apply to a partnership for a taxable year if any partner in the partnership during that taxable year is a pass-thru partner as defined in section 6231(a)(9)." Unified Partnership Audit Procedures, 66 Fed. Reg. 50,541, 50,556 (Oct. 4, 2001) (codified at Treas. Reg. § 301.6231(a)(1)–1(a)(2)); *see id.* at 50,544 (stating that the final regulations apply to partnership proceedings concerning partnership taxable years beginning on or after October 4, 2001). The Code, in turn, defines "partner" as "a partner in the partnership" and "any other person whose income tax liability . . . is determined in whole or in part by taking" partnership items "directly or indirectly" into account, 26 U.S.C. § 6231(a)(2) (2012), and "pass-thru partner" as "a partnership, estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in the partnership," *id.* § 6231(a)(9) (2012).

Although the 2001 Treasury Department regulations at issue here apply prospectively, the parties do not dispute that the temporary regulations were in effect when Mellow filed its 1999 partnership return and that the temporary regulations applied to Mellow's return. The parties also agree that the material terms in the temporary and final regulations are the same. The only difference is that the 2001 regulation added the language, "as defined in section 6231(a)(9)." However, the parties agree that under both the temporary and final regulations, a pass-thru partner is as defined in § 6231(a)(9). Therefore, like the parties, we base our analysis on the

language set forth in the final regulation, Treasury Regulation § 301.6231(a)(1)–1(a)(2).

## B. Factual and Procedural Background

Mellow Partners was formed on November 12, 1999 and dissolved in December 1999. Mellow's partnership agreement states that the purpose of the partnership was to invest partnership assets in "securities, businesses, real estate interests and other investment opportunities," including "stocks, bonds, options, foreign currencies, foreign exchange and over the counter derivatives, and other financial instruments." J.A. 68. The partnership agreement also states that the partnership was formed "by and between" MB 68th Street Investments LLC ("68th Street") and WNM Hunters Crest Investments LLC ("Hunters Crest") (collectively, "the single-member LLCs" or "the LLCs"). *Id*. Mr. Myer Berlow, the sole member of 68th Street, and Mr. William Melton, the sole member of Hunters Crest, signed the partnership agreement on behalf of their respective LLCs. The single-member LLCs did not elect to be treated as associations under the check-the-box tax-classification regulations and therefore were treated as disregarded entities separate from their owners. Accordingly, the LLCs did not file federal income tax returns for the 1999 tax year.

In April 2000, Mellow filed a Form 1065 partnership return for the taxable year beginning November 12, 1999 and ending December 29, 1999. Mellow attached to its Form 1065 Schedules K-1, *Partner's Share of Income, Credits, Deductions, etc.*, which identified 68th Street and Hunters Crest as Mellow's partners. On its Form 1065, Mellow answered "No" to the question, "Is this partnership subject to the consolidated [TEFRA] audit procedures of sections 6221 through 6233?" J.A. 86.

Notwithstanding Mellow's indication on its Form 1065 that it was not subject to TEFRA, the Commissioner of IRS ("Commissioner") conducted an audit of Mellow and issued a FPAA setting forth adjustments to the partnership items reported in Mellow's 1999 return. The FPAA concluded that Mellow "was formed and availed of solely for purposes of tax avoidance," "lacked economic substance," and "constitute[d] an economic sham for federal income tax purposes." Final Partnership Administrative Adjustment Letter, Tax Year Ended: December 31, 1999, J.A. 64. According to the FPAA, Mellow's partners engaged in a series of offsetting transactions involving digital options that were designed "to generate a loss" in order "to reduce substantially the present value of its partners' aggregate federal tax liability." *Id.* Consequently, the FPAA reduced to zero Mellow's partners' outside bases in their partnership interests and determined that accuracy-related penalties under 26 U.S.C. § 6662 (2012) applied.

Mellow filed a timely petition for readjustment in the Tax Court challenging the FPAA. The petition asserted that the FPAA "improperly asserts adjustments or grounds in support of adjustments that are not partnership items over which the court has jurisdiction." J.A. 18. Mellow then filed a motion to dismiss the case for lack of jurisdiction, which the Tax Court denied on June 2, 2015. Following the denial, the Commissioner moved for summary judgment as to the correctness of the FPAA's adjustments. The parties submitted a stipulation of facts and consented to the entry of a decision upholding most of IRS's adjustments to Mellow's partnership return and imposing accuracy-related penalties. The Tax Court entered the decision on November 10, 2016. Mellow's timely appeal followed.

## II. ANALYSIS

We have jurisdiction under 26 U.S.C. § 7482(a)(1) (2012) to review the Tax Court's decisions. And because Mellow no longer exists, venue is proper under § 7482(b)(1). We review the Tax Court's legal conclusions, including its jurisdictional and statutory interpretation determinations, *de novo*. *See Byers v. Comm'r*, 740 F.3d 668, 674 (D.C. Cir. 2014); *Barnes v. Comm'r*, 712 F.3d 581, 582 (D.C. Cir. 2013).

### A. Whether Mellow Qualified for the "Small-Partnership" Exception to TEFRA

The central question in this case is whether the Tax Court properly denied Mellow's motion to dismiss for lack of jurisdiction based on its finding that Mellow was subject to the TEFRA partnership provisions. Mellow argues that when a business entity with a single owner is classified as "disregarded" under the check-the-box regulations, the entity is treated as a "nullity" for all federal tax purposes. Appellant's Br. 21. This means that, in Mellow's view, if a disregarded single-member LLC is a partner in a partnership, it is actually the LLC's owner rather than the LLC itself that is the partner in the partnership. *Id.* Therefore, according to Mellow, Mellow's partners here were the single-member LLCs' individual owners (Berlow and Melton), not the two LLCs. Thus, Mellow contends that it qualified for the small-partnership exception because it had "10 or fewer partners each of whom [was] an individual." *Id.* at 10 (citing 26 U.S.C. § 6231(a)(1)(B)(i)). We disagree.

The record makes it absolutely clear that Mellow's partners were the single-member LLCs, not their individual owners. In the proceedings below, Mellow stipulated that "[a]t all times during the existence of Mellow Partners, its only

partners were" 68th Street and Hunters Crest. J.A. 52–53. Mellow's partnership agreement provides that the agreement was formed "by and between" 68th Street and Hunters Crest. J.A. 68. The agreement identifies Hunters Crest as its Managing Partner. And the agreement is signed by Berlow and Melton on behalf of their respective LLCs. Mellow also issued Schedules K-1, reporting each partner's share of income, losses, deductions, and credits, to the two LLCs, and there is no evidence that Schedules K-1 were issued to the LLCs' individual owners.

Moreover, Mellow has offered no pertinent authority, and we are aware of none, stating that a single-member LLC's tax classification under the check-the-box regulations dictates whether the LLC or its sole owner is treated as a partner in a partnership comprised of two single-member LLCs under TEFRA. The check-the-box regulations merely determine "the tax consequences for *that particular entity*." *Seaview Trading, LLC v. Comm'r*, 858 F.3d 1281, 1286 (9th Cir. 2017). For example, it is undisputed that if the entity is disregarded, the owner "reports the tax consequences of the entity's activities on his own tax return regardless of any independent existence the entity may have under state law and of any limitation on liability the entity may afford its owners under state law." Appellee's Br. 33. But the check-the-box regulations do not determine the tax consequences of a "separate, higher-level partnership" composed of two or more disregarded entities, nor do they specify who holds a partnership interest for TEFRA purposes. *Seaview Trading*, 858 F.3d at 1287. We therefore reject Mellow's claim that the single-member LLCs' classification as disregarded entities meant that the LLCs' individual owners, rather than the LLCs, were Mellow's partners for TEFRA purposes and, therefore, that it qualified for the small-partnership exception under § 6231(a)(1)(B)(i).

Mellow next contends that the Tax Court erred in finding that the single-member LLCs were "pass-thru partners" within the meaning of 26 U.S.C. § 6231(a)(9) (2012) and that a partnership with pass-thru partners is ineligible for the small-partnership exception. *See* Appellant's Br. 19–20. On this point, Mellow asserts that the pass-thru partner provision cannot be read to restrict the small-partnership exception, the latter of which makes no explicit mention of "pass-thru partners." *See id.* at 20–21, 21 n.9. Mellow recognizes that the Treasury Department has promulgated a regulation that provides that the small-partnership exception does not apply to a partnership with pass-thru partners. *Id.* at 20. However, Mellow contends that the list of entities in the pass-thru partner provision – "partnership, estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in the partnership," § 6231(a)(9) – does not include disregarded entities or single-member LLCs. *Id*.

As a preliminary matter, Mellow argues in a footnote in its opening brief that "Treasury arguably exceeded its authority in issuing Treas. Reg. § 301.6231(a)(1)–1(a)(2)." *Id.* at 21 n.9. "Treasury Regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." *Comm'r v. Portland Cement Co. of Utah*, 450 U.S. 156, 169 (1981). Mellow makes no serious claim that the regulation is substantively unlawful or that the Treasury Department exceeded its statutory authority in promulgating the regulation. We therefore have no grounds whatsoever in this case to question the validity of Treasury Regulation § 301.6231(a)(1)–1(a)(2) and, accordingly, decline to consider Mellow's vague and unsubstantiated argument. *See Hutchins v. Dist. of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999).

We also reject Mellow's argument that the pass-thru partner provision in § 6231(a)(9) should not be applied to

narrow the contours of the small-partnership exception. Mellow's view of the regulatory framework is misguided.

First, 26 U.S.C. § 6231(a)(1)(B) defines the "exception for small partnerships" as follows:

> The term "partnership" shall not include any partnership having 10 or fewer partners each of whom is an individual (other than a nonresident alien), a C corporation, or an estate of a deceased partner.

Second, Treasury Regulation § 301.6231(a)(1)–1(a)(2) explains that:

> The exception provided in section 6231(a)(1)(B) does not apply to a partnership for a taxable year if any partner in the partnership during that taxable year is a pass-thru partner as defined in section 6231(a)(9).

Third, 26 U.S.C. § 6231(a)(9), which is referenced in the aforementioned Treasury Regulation, defines "pass-thru partner" as follows:

> The term "pass-thru partner" means a partnership, estate, trust, S corporation, nominee, or other similar person through whom other persons hold an interest in the partnership with respect to which proceedings under this subchapter are conducted.

As can be seen from the terms of the statute, § 6231(a)(9) does not expressly state that disregarded single-member LLCs are "pass-thru partners." However, IRS has consistently interpreted the term "pass-thru partner," as defined in § 6231(a)(9), to include disregarded entities.

IRS presented a thorough explanation of its reasoning on this point in Revenue Ruling 2004–88, 2004–2 C.B. 165 (Aug. 9, 2004). The Revenue Ruling makes it clear that a partnership cannot qualify as a small partnership under § 6231(a)(1)(B) if it has pass-thru partners, and it concludes that a single-member LLC constitutes a pass-thru partner. In reaching this conclusion, the Revenue Ruling highlights that "'pass-thru partner' is defined in section 6231(a)(9) as 'a partnership, estate, trust, S corporation, *nominee or other similar person through whom other persons hold an interest in the partnership*.'" *Id.* (quoting § 6231(a)(9)). The Revenue Ruling then explains that "[i]f legal title to a partnership interest is held in the name of a person other than the ultimate owner, the holder of legal title is considered a pass-thru partner within the meaning of section 6231(a)(9)." *Id.*

The Revenue Ruling goes on to apply these principles to a hypothetical set of facts:

> [A]lthough LLC is a disregarded entity for federal tax purposes, LLC is a partner of [Partnership ("P")] under the law of the state in which P is organized. Similarly, although [individual "A"], LLC's owner, is a partner of P for purposes of the TEFRA partnership provisions under section 6231(a)(2)(B) because A's income tax liability is determined by taking into account indirectly the partnership items of P, A is not a partner of P under state law. Because A holds an interest in P through LLC, A is an indirect partner and LLC, the disregarded entity, is a pass-thru partner under the TEFRA partnership provisions. *Consequently, the small partnership exception does not apply to P because P has a partner that is a pass-thru partner.*

*Id.* (emphasis added).

IRS's position has been unwavering and consistently sustained by the Tax Court. For example, in *Bedrosian v. Commissioner*, 143 T.C. 83 (2014), the court noted that, pursuant to Treasury Regulation § 301.6231(a)(1)–1(a)(2) and other authorities, the small-partnership exception does not apply to a partnership if it has pass-thru partners. *Id.* at 104. The court then held that the term pass-thru partner "includes disregarded entities such as single-member LLCs." *Id.*; *see also 436, Ltd. v. Comm'r*, 109 T.C.M. (CCH) 1140, slip op. at 35 n.21 (Feb. 18, 2015); *6611, Ltd. v. Comm'r*, 105 T.C.M. (CCH) 1309, slip op. at 62 n.29 (Feb. 14, 2013); *Tigers Eye Trading, LLC v. Comm'r*, 97 T.C.M. (CCH) 1622, slip op. at 26–27 (May 27, 2009).

IRS's interpretation in its Revenue Ruling is entitled to respect. "Although a revenue ruling does not have the force and effect of Treasury Department Regulations, *see* 26 C.F.R. § 601.601(d)(2)(v)(*d*), it does constitute 'an official interpretation by the Service,' *id.* § 601.601(d)(2)(i)(*a*). Accordingly, the Supreme Court and virtually all of the Circuits have indicated that revenue rulings are entitled to some degree of deference." *Telecom\*USA, Inc. v. United States*, 192 F.3d 1068, 1072–73 (D.C. Cir. 1999); *see id.* at 1073 nn.4, 8–10 (collecting cases). In this vein, the Supreme Court has said that a Revenue Ruling reflecting IRS's longstanding, reasonable, and consistent interpretation of a Treasury Regulation "attracts substantial judicial deference." *United States v. Cleveland Indians Baseball Co*., 532 U.S. 200, 220 (2001) (citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)).

We have no doubt that IRS has reasonably interpreted and applied § 6231(a)(9) and Treasury Regulation § 301.6231(a)(1)–1(a)(2) in conjunction to give meaning to the

term "pass-thru partner." The agency's view is that, in addition to the specifically enumerated entities in § 6231(a)(9), the term "pass-thru partner" includes disregarded single-member LLCs. This interpretation is grounded in the words "other similar person through whom other persons hold an interest in the partnership," the catchall phrase in the pass-thru partner definition in § 6231(a)(9).

In this case, IRS argues that "Mellow's LLC partners unquestionably [were] . . . pass-thru partners," Appellee's Br. 10, because they "were entities through which 'other persons' – *i.e.*, Berlow and Melton – held 'an interest in the partnership,'" *id.* at 26 (quoting 26 U.S.C. § 6231(a)(9)). We agree. And, as noted above, Mellow has raised no meaningful challenge to the legality of Treasury Regulation § 301.6231(a)(1)–1(a)(2). Therefore, the only question here is whether IRS's interpretation of the pass-thru partner provision to include disregarded entities and single-member LLCs is permissible.

It is not entirely clear whether Revenue Ruling 2004–88 should be viewed as an interpretation of the statute, or of Treasury Regulation § 301.6231(a)(1)–1(a)(2), or both. IRS's position on this point is unclear. In its brief to this court, IRS contends that the court should defer to the Revenue Ruling under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), because the IRS's position that disregarded LLCs are "pass-thru" entities within the meaning of § 6231(a)(9) reflects a thorough, reasonable, and consistent construction *of the statute*. *See* Appellee's Br. 43–47. However, during oral argument, IRS's counsel also argued that the court should defer to the Revenue Ruling pursuant to *Auer v. Robbins*, 519 U.S. 452 (1997), because it reflects a reasonable interpretation of the Treasury Regulation. *See* Oral Arg. Recording at 30:36–32:15. We need not choose between these positions because, in our view, the

agency's interpretation easily passes muster, whether reviewed pursuant to *Skidmore* or *Auer*.

As already suggested, one way to view this case is to consider whether Revenue Ruling 2004–88 reflects a reasonable construction of the statute's pass-thru partner provision. This is the approach that was followed by the Ninth Circuit when it addressed the same issue that is before us today. *See Seaview Trading*, 858 F.3d at 1284–87. In doing so, the Ninth Circuit accorded *Skidmore* deference to the Revenue Ruling. The court first noted:

> The IRS directly addressed the question of whether a disregarded entity may constitute a pass-thru partner in Revenue Ruling 2004–88, 2004–2 C.B. 165. We have previously applied *Skidmore* deference to revenue rulings. Under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), and the Supreme Court's decision in *United States v. Mead Corp.*, 533 U.S. 218 (2001), an agency's ruling "is eligible to claim respect according to its persuasiveness." 533 U.S. at 221. We consider multiple factors when exercising *Skidmore* review of agency action, including "the thoroughness and validity of the agency's reasoning, the consistency of the agency's interpretation, the formality of the agency's action, and all those factors that give it the power to persuade, if lacking the power to control."

*Id*. at 1284–85. Then, after extensively examining the issue, the Ninth Circuit concluded that IRS's position was consistent with the statute and eminently reasonable, and held that "disregarded single-member LLCs constitute pass-thru partners under § 6231(a)(9)." *Id*. at 1287. We find no fault with the analysis and holding of our sister circuit. Therefore, if

*Skidmore* is the proper standard of review, we agree with *Seaview*'s conclusion that disregarded single-member LLCs are pass-thru partners under § 6231(a)(9). *See Del Commercial Properties, Inc. v. Comm'r*, 251 F.3d 210, 214 (D.C. Cir. 2001) (applying *Skidmore* deference in reviewing IRS Revenue Rulings).

Another way to view this case is to consider whether IRS's interpretation and application of Treasury Regulation § 301.6231(a)(1)–1(a)(2) is due deference under *Auer v. Robbins*. *See Drake v. FAA*, 291 F.3d 59, 68 (D.C. Cir. 2002) (describing the "*Auer* deference" standard). This is the approach that we followed in *Polm Family Foundation, Inc. v. United States*, 644 F.3d 406 (D.C. Cir. 2011), where the court deferred to IRS's interpretation of a disputed Treasury Regulation. In affording deference to IRS, the court said:

> An agency's interpretation of its regulation is controlling unless the interpretation is "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997). This is so even if the interpretation appears for the first time in a legal brief. Because the interpretation the [IRS] presents in its brief is consistent with the regulatory text, we have no basis for rejecting it in favor of some other version.

*Id.* at 409.

In applying *Auer* deference, we must assume that IRS's Revenue Ruling 2004–88 and/or its litigation position in this case reflect reasonable constructions of Treasury Regulation § 301.6231(a)(1)–1(a)(2). We must also assume that IRS has the authority to offer definitive interpretations of Treasury Regulations. *See Nat'l Muffler Dealers Ass'n, Inc. v. United States*, 440 U.S. 472, 484 (1979) (IRS's interpretation of a term

in a Treasury Regulation merited "serious deference"). If our assumptions are correct, then IRS's interpretation of Treasury Regulation § 301.6231(a)(1)–1(a)(2) easily fits the *Auer* mold.

When reviewing an agency's interpretation of its own regulation, we accord "substantial deference to [the] agency's interpretation," giving it "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). Courts typically consider three factors when deciding whether to apply *Auer* deference. "First, the language of the regulation in question must be ambiguous." *Drake*, 291 F.3d at 68. "Second, there must be 'no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.'" *Id.* (quoting *Auer*, 519 U.S. at 462). And third, "the agency's reading of its regulation must be fairly supported by the text of the regulation itself, so as to ensure that adequate notice of that interpretation is contained within the rule itself." *Id.*

We have little difficulty concluding that the pass-thru partner definition, as incorporated in the final Treasury Regulation, is ambiguous as to whether a disregarded single-member LLC – through which its sole owner may "hold an interest in [a] partnership," 26 U.S.C. § 6231(a)(9) – qualifies as a pass-thru partner. Further, we have no reason to believe that the agency's interpretation "does not reflect [its] fair and considered judgment on the matter." *Auer*, 519 U.S. at 462. On this point, "we consider whether the agency has 'ever adopted a different interpretation of the regulation or contradicted its position.'" *Drake*, 291 F.3d at 69. Mellow has offered no relevant authority suggesting that IRS has ever wavered from its position that disregarded single-member LLCs qualify as pass-thru partners within the meaning of the definition set forth

in § 6231(a)(9). To the contrary, as detailed above, IRS's position has been consistent over a long period of time.

Finally, IRS's determination that a disregarded single-member LLC constitutes a pass-thru partner is supported by the text of the pass-thru partner provision, as incorporated in the final regulation. The definition's catchall phrase, "other similar person through whom other persons hold an interest in the partnership," 26 U.S.C. § 6231(a)(9), "expressly contemplates its application beyond the specific enumerated forms." *Seaview Trading*, 858 F.3d at 1285. The agency's decision to focus on whether an entity holds legal title on behalf of another is consistent with the plain text of § 6231(a)(9), which specifically refers to the holding of a partnership interest on behalf of another. *See id.* at 1287; *White v. Comm'r*, 62 T.C.M. (CCH) 1181 (Nov. 5, 1991) ("[E]ach person specifically defined as a 'pass-thru partner' in section 6231(a)(9) [could] hold legal title to the partnership interest."), *aff'd*, 991 F.2d 657 (10th Cir. 1993).

We are unpersuaded by Mellow's argument, for which it provides no authority, that a "similar person" under § 6231(a)(9) must be one who can have "multiple owners," unlike single-member LLCs, which have only one owner. Appellant's Br. 22. Mellow bases this argument on the fact that the catchall phrase refers to "a similar <u>person</u> through whom other <u>persons</u> hold an interest." *Id.* (quoting 26 U.S.C. § 6231(a)(9)). Mellow's argument, however, ignores the plain meaning of the plural term "persons," which necessarily includes the singular "person." *See* 1 U.S.C. § 1 (2012) (stating that "unless the context indicates otherwise[,] . . . words importing the plural include the singular").

In sum, Mellow has "provide[d] no compelling reason to contravene the consistent stance of the IRS and the tax courts,

which have uniformly treated disregarded single-member LLCs as pass-thru partners." *Seaview Trading*, 858 F.3d at 1287. We therefore defer to the agency's reasonable construction of the term "pass-thru partner" and reject Mellow's claim that the Tax Court lacked jurisdiction.

## B.   Challenge to the Accuracy-Related Penalties

Mellow next argues, for the first time on appeal, that the Tax Court's decision to uphold accuracy-related penalties against Mellow was improper because IRS failed to comply with the written-approval requirement in 26 U.S.C. § 6751(b)(1) (2012). That provision states: "No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." 26 U.S.C. § 6751(b)(1). Mellow asks this court to reverse the Tax Court's decision imposing penalties or, in the alternative, remand the issue to the Tax Court to decide in the first instance. *See* Oral Arg. Recording at 11:55–12:05. We decline to do so because Mellow failed to properly raise and preserve this issue for consideration by this court.

In the Tax Court, Mellow consented to a decision resolving the case. In particular, it agreed that "all determinations, adjustments, assertions and conclusions . . . contained in the [FPAA] issued for Mellow Partners . . . are correct" and that penalties were proper under 26 U.S.C. § 6662(a). J.A. 140–41. A settlement agreement between IRS and a partnership regarding the "determination of partnership items for a[] partnership taxable year" is "binding on all parties to such agreement." 26 U.S.C. § 6224(c)(1) (2012); *see also* Tax Court Rule 248(b) (procedures for entry of decisions). A party who consents to the entry of a decision "generally waives

the right to appeal," unless it expressly reserves its right to do so. *Clapp v. Comm'r*, 875 F.2d 1396, 1398 (9th Cir. 1989). In the decision here, Mellow preserved its right to appeal the small-partnership determination, but did not reserve its right to appeal any other issue, including whether penalties were proper. Mellow therefore waived its right to challenge the penalties.

Mellow acknowledges its failure to preserve its challenge, *see* Oral Arg. Recording at 13:44–14:08, but maintains that its failure to raise the issue below should be excused because a recent Second Circuit decision, *Chai v. Commissioner*, 851 F.3d 190 (2d Cir. 2017), provided new grounds for challenging accuracy-related penalties under § 6751(b)(1), *see* Appellant's Reply Br. 23–24. In *Chai*, the Second Circuit held that an individual taxpayer in a deficiency proceeding could raise a challenge under § 6751(b)(1) for the first time in a post-trial brief in the Tax Court because doing so "was tantamount to a post-trial motion for judgment as a matter of law" and raising the issue at that time did not "den[y] the [IRS] the opportunity to properly rebut the argument." 851 F.3d at 222–23. On the merits, *Chai* found that the "initial determination of such assessment" language in § 6751(b)(1) was ambiguous and interpreted it to mean that "written approval of the initial penalty determination [must be obtained] no later than the date the IRS issues the notice of deficiency (or files an answer or amended answer) asserting such penalty." *Id.* at 218, 221. In reaching its decision, the Second Circuit rejected the Tax Court's determination in *Graev v. Commissioner* (*Graev I*) that under § 6751(b)(1) IRS was permitted to obtain written approval at any time before the penalty was assessed. *See* 147 T.C. No. 16, slip op. at 32–33 (Nov. 30, 2016). After the Second Circuit issued its opinion in *Chai*, the Tax Court vacated its decision in *Graev I* and adopted the Second Circuit's reading of § 6751(b)(1) as its own. *See Graev v.*

*Comm'r* (*Graev III*), 149 T.C. No. 23, slip op. at 5, 14 (Dec. 20, 2017).

Mellow contends that it "would have been premature" to challenge IRS's failure to comply with § 6751(b)(1) in the Tax Court because *Chai* "created new law" and was issued after the Tax Court entered its decision in this case. Appellant's Reply Br. 23–24. Mellow points to several Tax Court decisions and orders post-dating *Chai* that addressed whether IRS had complied with the written-approval requirement as interpreted in *Chai*, and argues that, in light of these decisions, this court should remand the case to the Tax Court to determine whether IRS met its obligations under § 6751(b)(1). *See* Mellow's Rule 28(j) Letter (Jan. 29, 2018); Mellow's Rule 28(j) Letter (Feb. 12, 2018). We find no merit in this argument.

Mellow's reliance on *Chai* and the various Tax Court decisions that post-date *Chai* is misplaced because in each of those cases the parties or the Tax Court acting *sua sponte* raised the § 6751(b)(1) issue while the dispute remained pending in the Tax Court. Here, however, Mellow did not raise its § 6751(b)(1) challenge at any point during the Tax Court proceedings. Nothing precluded Mellow from doing so. Section 6751 has been in existence since 1998. *See* Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105–206, § 3306(a), 112 Stat. 685, 744. Mellow was free to raise the same, straightforward statutory interpretation argument the taxpayer in *Chai* made – that is, that the language of § 6751(b)(1) requires IRS to obtain written approval by a certain point in the process in order to impose penalties.

In this regard, we find the First Circuit's decision in *Kaufman v. Commissioner*, 784 F.3d 56 (1st Cir. 2015) – which was issued prior to *Chai* – more apposite here. There, the First Circuit held that the taxpayer had not preserved his argument

that the Commissioner did not comply with the written-approval requirement in § 6751(b)(1) by failing to raise it in the Tax Court proceedings. *See id.* at 71. As a result, the court refused to consider the claim in the first instance on appeal. *Id*. This reasoning applies with equal force here. Accordingly, we decline to consider or remand Mellow's penalties claim.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Tax Court.

*So ordered.*